1.70 ACRES, .20 ACRES, AND .28 ACRES OF REAL PROPERTY AND STRUCTURES THEREON (Robert and Wendi MIZELL), Appellants,

and

One Hundred Thirty–Five Dollars and Twenty–Six Cents ($135.26) (Robert and Wendi Mizell), Appellants,

v.

The STATE of Texas, Appellee.

Nos. 09–95–051 CV, 09–95–052 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 21, 1996.

Decided Nov. 27, 1996.

Joseph C. Hawthorn, Beaumont, for Appellants.

R.F. "Bo" Horka, Silsbee, for Appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

For purposes of judicial efficiency, these separate appeals, involving forfeiture of real property and structures thereon and United States currency in the amount of $135.26, will be disposed of in a single opinion.

In both cases before us, the State of Texas, by and through the Southeast Texas Narcotics and Intelligence Task Force, filed on March 19, 1992, a Notice of Seizure and Intended Forfeiture of certain real and personal property allegedly owned by Robert and Wendi Mizell. The real property was generally described as 1.70 acres, .20 acres, and .28 acres of real property and structures thereon; the personal property consisted of $135.26 in United States currency. Some two and one-half years later, on November 17, 1994, the cases were tried simultaneously to the bench; judgments of forfeiture were granted in both cases in favor of the State.

### APPLICABLE LAW

Concerning forfeiture cases, this court recently held in *Ex parte Baucom*, 928 S.W.2d 748 (Tex.App.—Beaumont 1996, pet. filed), that such proceedings are civil in nature; in addition, the Code of Criminal Procedure provides that a forfeiture proceeding under the forfeiture of contraband statute is a civil proceeding. TEX.CODE CRIM.PROC.

ANN. art. 59.05(b) (Vernon Supp.1997). The State, therefore, has the burden of proving by a preponderance of the evidence that the property is subject to forfeiture. *$22,922.00 v. State*, 853 S.W.2d 99, 101 (Tex.App.— Houston [14th Dist.] 1993, writ denied). Since the forfeiture proceeding is a civil case, we rely on the Texas Rules of Civil Evidence, rather than the Texas Rules of Criminal Evidence, to govern the admission and exclusion of evidence.[1] *See* art. 59.05(b).

## FACTS

David Laine, an investigator for the Southeast Texas Narcotics and Intelligence Task Force, testified he stopped Ethel Potter for a traffic violation on or about February 27, 1992. Laine testified that during that stop he observed a "halfburnt" marijuana cigarette in the ashtray. After placing Potter under arrest, he recovered a baggie of marijuana and a couple of packs of hand-rolled cigarettes. Potter did not testify at trial. Over the objection of appellant, the officer was allowed to relate at trial the statement Ethel Potter made to him regarding the source of the narcotics. The officer testified Potter told him she had bought the substance from a person called "John Ed"; she also described the appearance of the house and the individual ("John Ed") from whom she had purchased the narcotics. After recognizing the description fit Robert Mizell, Officer Laine testified he obtained a search warrant for the Mizell residence.

The search warrant was executed at approximately 7:50 p.m. on February 27, 1992. Officer Laine testified that, in the process of executing the warrant, he saw Robert Mizell exit from the rear of the house and flee into the woods. Laine further testified he saw Mizell's arms making a flying upward motion just as Mizell entered the woods. The State introduced several pictures depicting the marijuana found during the search, some baggies (sandwich bags), and a set of scales, all allegedly discarded by Robert Mizell. The State further introduced a photograph purporting to show the residence and garage of Mizell. The officer testified that $135.26 in currency, a check in the amount of $200, the residence, land surrounding it, and the outbuildings were all seized.

Upon cross-examination, Officer Laine admitted that, in exchange for Ethel Potter's cooperation and testimony against Robert Mizell, she was not being prosecuted. He further admitted that the only marijuana found at the time of the execution of the warrant was not in the Mizell house, but was located in the woods, some 150 feet away from the house. The total amount of marijuana recovered was 1.25 ounces, which would calculate, according to figures testified to by Officer Laine to be worth less than $200. At the time of the execution of the warrant, approximately ten officers were present at the scene; three officers and a canine conducted the actual search. Total time at the scene was approximately four hours.

## POINTS OF ERROR

Appellant brings forward five points of error concerning the real property forfeiture and two points of error on the personal property forfeiture.

In Points of Error One and Two in the real property forfeiture case, appellant alleges there was no evidence or, in the alternative, insufficient evidence to show that the real property described in the Original Notice of Seizure and Intended Forfeiture was the property used or intended to be used in the alleged commission of a felony offense.

In a nonjury trial where no findings of fact are requested or filed, we presume that the trial court made all necessary findings in support of its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992); *State v. One Residence Located at 1204 North 12th Street, Alamo, Tex.*, 907 S.W.2d 644, 645 (Tex.App.—Corpus Christi 1995, no writ). When, as in this case, a statement of facts is brought forward, these implied findings may be challenged by factual or legal insufficiency points the same as jury findings or a trial court's findings of fact. *Holt Atherton*, 835 S.W.2d at 84; *One*

---

1. It is to be noted that the State, both at trial and on appeal, relies heavily on criminal cases re-garding the court's evidentiary rulings in this case.

*Residence,* 907 S.W.2d at 645. When deciding a no evidence point, we must consider only the evidence and inferences tending to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995). We will uphold the finding if more than a scintilla of evidence supports it. *Id.,* at 499; *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951). More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Crye,* 907 S.W.2d at 499. In the instant case, the evidence is legally insufficient to show that the property described in the pleadings is the same property alleged at trial to have been used or intended to be used in the commission of a felony under Chapter 481. Consequently, we never reach Point of Error Two, the factual insufficiency point.

■ In its Original Notice of Seizure and Intended Forfeiture, the State describes the real property sought to be forfeited as "1.70 ACRES, .20 ACRES, AND .28 ACRES OF REAL PROPERTY AND STRUCTURES THEREON" and asserts that those tracts are contraband and subject to seizure and forfeiture "as provided by Chapter 59 of the Texas Code of Criminal Procedure." In paragraph VII of the pleading, the State makes specific reference to "[the] officer's affidavit and Real Property descriptions attached herein describing property to be seized." The attachments include four warranty deeds purportedly describing the property sought to be forfeited.

In a forfeiture proceeding, the State must prove by a preponderance of the evidence that the seized property is contraband and, therefore, subject to forfeiture. TEX.CODE CRIM.PROC.ANN. art. 59.05(b). "Contraband" is defined as "property of any nature, including real, personal, tangible, or intangible, that is ... (B) used or intended to be used in the commission of (i) any felony under Chapter 481, Health and Safety Code (Texas Controlled Substances Act) ..." TEX.CODE CRIM. PROC.ANN. art. 59.01(2) (Vernon Supp.1997).

■ The State was required to prove at trial that the property, which it alleged in its pleading to be subject to forfeiture, is the same property alleged at trial to have been used or to have been intended to be used in the commission of a felony under Chapter 481. The State, however, never introduced into evidence at trial the deeds containing property descriptions of the tracts in question. The mere fact that deeds are attached to the pleadings does not constitute evidence that the property described in the pleadings is the property that was intended to be used in the commission of a felony under Chapter 481. Instruments attached to pleadings are not evidence unless they are introduced as such. *American Fire and Indem. Co. v. Jones,* 828 S.W.2d 767, 769 (Tex.App.—Texarkana 1992, writ denied).

Although there is no documentary evidence in the trial record concerning the real property, there is testimony from Officer David Laine concerning directions on how to get the real property:

Q. (By Mr. Hardy) Where was the search warrant for, David?

A. The search warrant was for a wood-framed dwelling, blue and white trim with gray shingles, composite roof, having a back porch with a tin roof, front door facing west.

The directions to the residence is traveling southbound on U.S. 69 from the intersection of FM 3063. Go .7 miles, turn westward on Old Highway 69. Travel approximately one tenth of a mile south. Turn due west on an unnamed dirt road. Travel approximately 150 feet. Turn south on an unnamed dirt road, being the first residence on the east side of the road. And that will be the location of the residence.

Q. Is that the residence of Robert and Wendi Mizell?

A. Yes, sir, in Village Mills, in Hardin County.

The directions, however, are no evidence that the property referred to in the pleadings is the property to which Officer Laine is giving directions. No connection is made between the two.

The same is true of another portion of Officer Laine's testimony in which he stated that the residence, the land surrounding it, and all the outbuildings were seized. The State never establishes that the property alleged in the pleadings to be subject to forfeiture is the property testified about at trial.

Concerning a previous search of the Mizell house in November 1991, Officer Glen Smith testified as follows:

Q. And where all did you look?

A. It would have been in the house. I think he has got a shed outside on the south part, I guess. And then his property includes some wooded area along the fence in the back. And I can't recall the acreage, but I think there seems to be an acre or two there. It would have been the entire place.

His testimony likewise never establishes that the property on which the November 21, 1991, search was conducted is the property described in the forfeiture pleading in the instant suit.

Also contained in the trial record is the statement by Robert Mizell regarding his ownership of the house made the subject of the forfeiture proceedings:

Q. [By Defense Counsel] Mr. Mizell, what would you estimate the market value of your house to be?

A. About $30,000.

Q. And that is the house that is seized and is the subject of the forfeiture action here?

A. Yes, sir.

The State contends that Mizell's admission of ownership of a house is sufficient to establish that the property referred to in the pleadings—the 1.70 acres, .20 acres, and .28 acres—was used or intended to be used in the commission of a felony under Chapter 481. There is, however, no evidence in the record concerning whether the three tracts are contiguous or separate, no evidence as to which tract the house may be on, and no evidence as to whether one, two, or all three tracts were used or intended to be used in the commission of the alleged felony. Any statement by Mizell concerning ownership of the house, without more, is no more than a scintilla of evidence.

■ It must be remembered that forfeiture is an *in rem* civil proceeding. *State v. Lot 10, Pine Haven Estates,* 900 S.W.2d 400, 402 (Tex.App.—Texarkana 1995, no writ); *$191,452.00 v. State,* 827 S.W.2d 430, 433 (Tex.App.—Corpus Christi 1992, writ denied); *Costello v. State,* 774 S.W.2d 722, 723 (Tex.App.—Corpus Christi 1989, writ denied). It is not a criminal proceeding against an individual, although that seems to have been the State's focus in the instant case. The specific property alleged in the pleadings as being subject to forfeiture must be proved at trial to be the specific property used or intended to be used as contraband. Proof that a felony offense was committed at the residence of Mizell is not proof that the residence is the property described in the deeds attached to the notice of forfeiture. Consequently, we find that the State has not proved by a preponderance of the evidence that the property referred to in the pleadings is that which was used or intended to be used in the commission of a felony. We sustain Point of Error One in the real property forfeiture case. Having sustained Point of Error One, which is dispositive of the real property forfeiture, we do not address the remaining points concerning the real property.

In Point of Error Two in the currency forfeiture case, appellants contend the evidence was insufficient to establish the alleged underlying felony of delivery of marijuana. The wording of the point itself does not specify whether appellants are urging a legal insufficiency or factual insufficiency point. In the argument within the point, appellants make reference to the standard reserved for factual insufficiency points—namely, the evidence being "against the great weight and preponderance of the evidence" and the court's review of *all* the evidence. In their recitation of the facts, however, appellants make a "no evidence" argument, claiming that the only evidence of the underlying felony is Ethel Potter's inadmissible hearsay statement. In addition, in their prayer at the conclusion of the sufficiency point, appel-

lants ask this court to reverse and render a no evidence point.

■ The Texas Supreme Court has repeatedly instructed that points of error should be liberally construed in order to obtain a just, fair, and equitable adjudication of the rights of the parties. *See Anderson v. Gilbert,* 897 S.W.2d 783 (Tex.1995); *Ellis County State Bank v. Keever,* 888 S.W.2d 790, 799 (Tex.1994); *Williams v. Khalaf,* 802 S.W.2d 651, 658 (Tex.1990); *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). A court is to look "not only at the wording of the points of error, but to the argument under each point to determine . . . the intent of the party." *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982).

In reviewing the points, the argument, and prayer, we, therefore, construe appellants' insufficiency point as a legal insufficiency point.

In a forfeiture proceeding, the State must prove by a preponderance of the evidence that the property seized is contraband and, therefore, that the property is subject to forfeiture. TEX.CODE CRIM.PROC.ANN. arts. 59.01(2), 59.02(a), 59.05(b); *$162,950 in Currency of U.S. v. State,* 911 S.W.2d 528, 529 (Tex.App.—Eastland 1995, writ denied). "Contraband" is defined as property of any nature, including real, personal, tangible, or intangible property that is used or intended to be used in the commission of any felony under the Texas Controlled Substances Act. *See* TEX.CODE CRIM.PROC.ANN. 59.01(2)(B)(i). As noted by appellants, the underlying felony alleged by the State in the instant case is Robert Mizell's alleged delivery of a controlled substance.

■ The State is required in a forfeiture proceeding to show probable cause for seizing the property. *Fifty-Six Thousand Seven Hundred Dollars in U.S. Currency v. State,* 730 S.W.2d 659, 661 (Tex.1987); *$9,050.00 in U.S. Currency v. State,* 874 S.W.2d 158, 161 (Tex.App.—Houston [14th Dist.] 1994, writ denied). This means the State must establish a substantial connection or nexus between the seized currency and the defined criminal activity. *$56,700 v. State,* 730 S.W.2d at 661; *$9,050 v. State,* 874 S.W.2d at

161. Thus, the State must prove, considering all the evidence, that it was more reasonably probable than not that the seized money was either intended for use in, or derived from, a violation of the offenses enumerated in the forfeiture statute. *Id.*

Since we have construed appellants' sufficiency challenge to be a no evidence point, we consider only the evidence which tends to support the fact finder's findings and disregard all evidence and inferences to the contrary. *$22,922 v. State,* 853 S.W.2d at 101. If there is more than a scintilla of evidence to support the judgment, the no evidence challenge fails. *See $47,200 v. State,* 883 S.W.2d 302 (Tex.App.—El Paso 1994, writ denied).

As evidence of the $135.26 being used in the commission of a felony under Chapter 481, the State points us to the testimony of Officer David Laine in which he recounts a statement made to him by Ethel Potter during the traffic stop of February 27, 1992. As previously noted in our recitation of the facts, Officer Laine testified that Potter told him she had purchased marijuana from "John Ed" (recognized by Officer Laine as Robert Mizell) just prior to the traffic stop on February 27. There is, however, no testimony as to how Potter paid for the purchase or the amount paid, and no testimony as to the length of time between the alleged buy and the discovery of $135.26 on Mizell's person during the execution of the search warrant that night.

The trial court allowed Potter's statement to be put into evidence through the testimony of Officer Laine. Appellant's counsel, both at trial and on appeal, complained of the admission of Potter's statement into evidence and thereby preserved his complaint on appeal. The trial counsel's objection, trial court's ruling, and the testimony at issue are set out below:

Q. What did Ms. Potter tell you?

Mr. Hawthorn: Your Honor, I am going to object as to what she told him because that is hearsay.

Mr. Hardy: Your Honor, that is not hearsay. It is an exception under 803(1). It is a present sense impression, and I have the cases and I would ask the

court to look at them before it makes any type of ruling.

....

Mr. Hawthorn: Your Honor, it is my understanding that this testimony is not being admitted at this time?

The Court: That is correct. This testimony is being received by the court subject to Mr. Hawthorn's objection.

Go ahead, sir.

Mr. Hardy: Thank you, Your Honor.

Q. (By Mr. Hardy) David, if you would, back up just a little bit. You placed Ms. Potter under arrest; is that correct?

A. Yes, sir, I did.

Q. You read her, her Miranda warnings?

A. Yes, sir, I did.

Q. Now, what did Ms. Potter tell you?

A. I asked her where she bought the baggie of marijuana. And her statement to me was, "I just bought it from John Ed."

Q. Okay. Did she give you a location?

A. Yes, sir, she did.

Q. What all did she tell you?

A. She basically described a blue, as she called it, colonial house with white trim, the garage on the south side of the residence. And described the individual as late 20's, early 30's, thinning on top, his hair, and a medium build; and said that the subject had a wife named Wendi.

Q. Okay. How long had you been working Hardin County narcotics at that time?

A. A little over a year.

Q. Did that residence and someone with a wife and a name John Ed ring a bell with you at that time?

A. Immediately.

....

The Court: The objection is overruled. The testimony is going to be received.

Mr. Hardy: Thank you, Your Honor.

....

Q. Now, at the traffic stop, was there anything else that this lady told you

right at that stop, when you first stopped her?

Mr. Hawthorn: Your Honor, do I have a running objection—

The Court: Yes, sir.

Mr. Hawthorn:—To everything that Ethel Potter told this officer or anyone else?

The Court: Yes, sir, you do have.

....

A. (By the Witness) Her statement to me was that she had just left John Ed's residence and had just purchased that baggie of marijuana. When I viewed the baggie of marijuana, I seen that it was compressed marijuana that usually comes into the United States in bricks.

She stated that she seen a brick of marijuana at John Ed's house and that this was chipped off of a brick and placed into the baggie and weighed up.

And based upon that information to me in that she had just left John Ed's residence, I felt I had grounds for the search warrant and that is why we went to the Sheriff's Department and continued the investigation.

The State contended at trial and on appeal the evidence was admissible under the "present sense impression" exception to the hearsay rule in TEX.R.CIV.EVID. 803(1). If the statement is admissible under that exception, then we may consider it in our review of the no evidence point of error. If the statement is inadmissible, and trial counsel objected to its admission, then the evidence is incompetent and we are precluded from considering it in our no evidence review. *North Dallas Diagnostic Center v. Dewberry,* 900 S.W.2d 90, 97 (Tex.App.—Dallas 1995, writ denied); *Atkinson Gas Co. v. Albrecht,* 878 S.W.2d 236, 242 (Tex.App.—Corpus Christi 1994, writ denied); *Marshall v. Telecommunications Specialists, Inc.,* 806 S.W.2d 904, 907 (Tex.App.—Houston [1st Dist.] 1991, no writ).

As noted above, the State contends Potter's statement is admissible under the "present sense impression" exception to the hearsay rule. Although the State references TEX. R.CRIM.EVID. 803(1) in seeking admissibility

of Potter's statements, we review the issue under Tex.R.Civ.Evid. 803(1) for the reasons discussed previously herein. The exception provides as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (1) **Present sense impression.** A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.

In urging the "present sense impression" exception, the State relied upon and presented to the trial court the following criminal cases: *Rabbani v. State*, 847 S.W.2d 555 (Tex.Crim.App.1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 731 (1993); *Kubin v. State*, 868 S.W.2d 394, (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd); *Franklin v. State*, 858 S.W.2d 537 (Tex.App.—Beaumont 1993, pet. ref'd). Similarly, in its brief on appeal, the State points us only to criminal cases regarding the hearsay point and, in so doing, impliedly suggests that this court should analyze the hearsay statement in accordance with the construction given by appellate courts of TEX.R.CRIM.EVID. 803(1) in criminal cases. In those criminal cases urged by the State, the appellate courts have applied a more relaxed standard in construing the "present sense impression" exception in the Texas Rules of Criminal Evidence than in construing that same exception in the Texas Rules of Civil Evidence. Although we do not conclude the criminal evidence rules apply in the instant case, the result under either civil or criminal rules is the same.

■ In civil cases, it has been said that the "present sense impression" exception exists because statements falling into that category are likely to be true. *First Southwest Lloyds Ins. Co. v. MacDowell*, 769 S.W.2d 954, 958–959 (Tex.App.—Texarkana 1989, writ denied). Present sense impressions are those comments made at the time the declarant is receiving the impression or immediately thereafter. They possess the following safeguards which render them reliable: 1) the report at the moment of the thing then seen, heard, etc. is safe from any error from

defect of memory of the declarant; 2) there is little or no time for a calculated misstatement; 3) the statement will usually be made to another—the witness who reports it—who would have equal opportunity to observe and hence to check a misstatement. *Id.*, at 958–959. Thus, a present sense impression is a comment made at the very time the declarant is perceiving the event, or immediately thereafter. The rationale for the exception stems from the statement's contemporaneity, not its spontaneity.

■ The rationale behind the "present sense impression" exception in TEX.R.CRIM. EVID. 803(1) is the same as, if not identical to, the rationale behind that same exception in the Texas Rules of Civil Evidence. As the Court of Criminal Appeals stated in *Rabbani*:

> If a person observes some situation or happening which is not at all startling or shocking in its nature, nor actually producing excitement in the observer, the observer may yet have occasion to comment on what he sees (or learns from other senses) *at the very time that he is receiving the impression.* Such a comment, as to a situation then before the declarant, does not have the safeguard of impulse, emotion, or excitement, but there are other safeguards. In the *first place,* the report at the moment of the thing then seen, heard, etc., is safe from any error from defect of *memory* of the declarant. *Secondly,* there is little or no *time* for calculated misstatement, and *thirdly,* the statement will usually be made to another (the witness who reports it) who would have equal opportunities to observe and hence to check a misstatement. Consequently, it is believed that such comments, strictly limited to reports of *present* sense impressions, have such exceptional reliability as to warrant their inclusion within the hearsay exception for Spontaneous Declarations. (emphasis added)

*Rabbani*, 847 S.W.2d at 560, *quoting* Ray, 1A Texas Practice, Law of Evidence § 916, at 158–159 (3d ed. 1980). Thus, the rule regarding statements of "present sense impression" in the criminal rules context provides the same safeguards as those in civil cases.

■ Although the Court of Criminal Appeals in *Rabbani* cited with approval the three safeguards afforded by the "present sense impression" rule, the court also stated by footnote that TEX.R.CRIM.EVID. 803(1) "contains no requirement that the witness have an opportunity to check the veracity of the declarant's statement. The nature of the present sense impression, contemporaneity of the event and the declaration, ensures reliability of the statement." *Rabbani*, 847 S.W.2d at 560, n. 9, overruling *Myre v. State*, 545 S.W.2d 820, 826–827 (Tex.Crim.App. 1977). Although the State may argue, based on *Rabbani*, that the third safeguard is no longer a requirement, the presence or absence of that safeguard does not affect the holding in the instant case. As noted in *Rabbani*, 847 S.W.2d at 560, "The rationale for the exception stems from the statement's contemporaneity, not its spontaneity...." The requirements of Rule 803(1) (whether under the civil rules or criminal rules), when applied to Ethel Potter's statement, have not been met.

Although the declarant (Ethel Potter) made a statement describing or explaining an event or condition, she did not make the statement while she was perceiving the event or condition. The State concedes that point, but claims Potter's statement falls within the category of "immediately thereafter," and, therefore, qualifies as an exception to the hearsay rule. However, there is no probative evidence in the record which establishes the amount of time which elapsed between Potter's alleged purchase of the marijuana from Mizell and her conversation with Officer Laine. The State claims a ten minute lapse of time, but offers no proof of that contention from the record. Without affirmative evidence in the record regarding the distance between Mizell's house and the place where Potter was stopped for the traffic violation and the length of time it took Potter to traverse that distance, we cannot conclude that the statement was made immediately after the event in question or within such time as would not allow for calculated misstatement.

In its brief on appeal, the State maintains the trial court could have (1) taken judicial notice of the distance between appellants' home and the point at which Ms. Potter's car was stopped, (2) assumed her speed, (3) calculated the time between the buy and the stop to be ten to twelve minutes, and thereby (3) have taken judicial notice that her statement was made ten to twelve minutes after perceiving the event. We do not agree.

■ It has been said that judicial notice is one of the oldest doctrines of common law; however, it is not without safeguards and limitations. Taking judicial knowledge of any fact is subject to the test of "verifiable certainty." *See, Eagle Trucking Co. v. Texas Bitulithic Co.*, 612 S.W.2d 503, 506 (Tex. 1981). The Court may take judicial notice of the location of cities, counties, boundaries, dimensions, and distances, because geographical facts such as these are easily ascertainable and capable of verifiable certainty. *Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 774 (Tex.App.—Beaumont 1992, writ denied). Well-known and easily ascertainable facts may be judicially noticed. *Eagle Trucking*, 612 S.W.2d at 506. Although such variables as a vehicle's speed, road construction or repairs, weather, traffic, or accidents may be matters in someone's personal knowledge, they are not necessarily matters subject to judicial review. Personal knowledge is not judicial knowledge, and a judge may personally know a fact of which he cannot take judicial knowledge. *Id.* Using the test of "verifiable certainty," we conclude that the court below could not take judicial notice of a ten minute time span to drive an alleged distance of 9.2 miles.

Based on our review of the record, and in accordance with civil law, we find it has not been established that Potter's statement was made contemporaneously with, or immediately thereafter, the event perceived, so as to be reliable, and, consequently, does not qualify as a statement of "present sense impression." TEX.R.CIV.EVID. 803(1). Potter's statement, therefore, is inadmissible hearsay. Consequently, it constitutes incompetent evidence and cannot be considered in our no evidence review. *Atkinson Gas Co.*, 878 S.W.2d at 242.

■ In the instant case, there is no direct evidence of an intent to deliver or delivery of

a controlled substance, since Potter's statement is inadmissible. Officer Laine, the recipient of the information from Potter, never personally observed any drug transaction; neither did any other witness. The only competent evidence in the record tending to support the trial court's implied finding that the $135.26 found on Mizell is contraband is circumstantial: the discovery during the execution of the search warrant of scales, sandwich bags, and 1.25 ounces of marijuana.

■ When relying on circumstantial evidence in forfeiture cases, the State is required to offer proof which does more than raise a mere surmise or suspicion regarding the source of the money. *$11,014.00 v. State*, 828 S.W.2d 814, 816 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Antrim v. State*, 868 S.W.2d 809, 812 (Tex.App.—Austin 1993, no writ). The State must present sufficient circumstantial evidence to meet its burden by a preponderance of the evidence. *Spurs v. State*, 850 S.W.2d 611, 614 (Tex.App.—Tyler 1993, writ denied).

Over appellant's objection, the court also allowed into evidence testimony regarding other alleged instances of appellant's connection to drugs. Officer Laine testified that police searched Mizell's house again on March 19, 1992, and found only a marijuana cigarette in the television room. Further testimony was elicited that on November 21, 1991, a confidential informant came out of Mizell's house with two small sandwich bags containing marijuana. There was no testimony that Mizell was in the house at the time or that the buy was made from Mizell. A search warrant was obtained, the house was searched, and a marijuana cigarette was found. Mizell also testified he was arrested in Jefferson County some time after the February 27, 1992, offense; there was marijuana in the car in which he was riding.

■ The evidence conclusively shows that Mizell is a user of marijuana; indeed, he is a self-confessed user. Mizell testified that he had purchased marijuana earlier in the day on February 27, and that he had used his scales to weigh his purchase. There is no evidence in the record that $135.26 or any sum of money was received by Mizell for any delivery of marijuana or that the money was intended to be used in a delivery. Moreover, the amount of money found on his person is so small that, without some specific substantial link connecting the $135.26 to delivery or intent to deliver, there is no more than a scintilla of evidence or surmise to connect it to a drug transaction. Mizell's testimony, coupled with the small sum of money ($135.26) and the small amount of marijuana (1.25 ounces) found during the execution of the search warrant, is equally consistent with the proposition that Mizell is a user/purchaser of marijuana. The evidence does not show, either directly or circumstantially, that the $135.25 on his person is substantially linked to delivery of marijuana or the intent to deliver. Without a showing of a substantial connection between the property to be forfeited and the statutorily defined criminal activity that establishes the probable cause, the State lacks authority to seize a person's property. *$56,700*, 730 S.W.2d at 661; *$47,200.00 v. State*, 883 S.W.2d at 306.

We conclude, therefore, that the required substantial nexus, or link, between the currency and the offense is lacking, and that the proposition that the $135.26 was used or intended to be used in a the commission of a felony under Chapter 481 is nothing more than a surmise. We hold there is legally insufficient evidence to support the trial court's judgment forfeiting the $135.26.

Having sustained appellant's legal sufficiency points in both the real property and the currency forfeiture cases, we reverse the judgments of the trial court and render judgment that the State take nothing in both forfeiture cases.

**REVERSED AND RENDERED.**