In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00143-CR


______________________________




DAVID FARRIS TIDWELL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


Bowie County, Texas


Trial Court No. 05M1602-CCL




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 After a lucky night at the casinos in Bossier City, Louisiana, David Farris Tidwell's luck ran
out when DeKalb police officer Bryan Robertson stopped Tidwell for driving eighty miles per hour
in a forty-five-mile-per-hour zone July 18, 2005. Initially, Robertson smelled a "strong odor of
alcoholic beverage" on Tidwell's person. Later, as Robertson spoke with Tidwell and as Tidwell
unsuccessfully sought to see the radar display, Robertson noticed the smell of alcohol on Tidwell's
breath. 

 Tidwell agreed to submit to field sobriety tests, but explained that he had a foot injury and
would not be able to complete the one-leg stand test. Robertson then administered the Horizontal
Gaze Nystagmus (HGN) test on Tidwell. After the HGN test indicated the presence of alcohol in
Tidwell's system, Robertson asked Tidwell to submit to a portable breath test, which Tidwell refused. 
Tidwell was arrested and, subsequently, convicted for the misdemeanor offense of driving while
intoxicated (DWI). A Bowie County jury assessed punishment at 180 days in the Bowie County jail. 
That sentence was suspended, and Tidwell was placed on community supervision for twelve months. 
 Tidwell now appeals, bringing two points of error. Since we conclude that (1) the officer's
testimony did not constitute an impermissible correlation between the HGN test performance and
a specific blood-alcohol content (BAC) and (2) Tidwell failed to provide the trial court the necessary
information to require the trial court to take judicial notice of the location of a hurricane on a date
certain and the status of related evacuations, we affirm Tidwell's conviction.

(1) The Testimony Does Not Constitute an Impermissible Correlation Between HGN Test
Results and BAC


 Tidwell first contends that the trial court abused its discretion by admitting evidence that
Tidwell's performance on the HGN test corresponded to a specific BAC. To support his contention,
he relies on Emerson v. State, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). (1) In Emerson, the Texas
Court of Criminal Appeals disallowed testimony that would link performance on an HGN test to a
specific BAC:

 A witness qualified as an expert on the administration and technique of the HGN test
may testify concerning a defendant's performance on the HGN test, but may not
correlate the defendant's performance on the HGN test to a precise BAC.

 

Id. Ultimately, the Emerson court concluded, however, that the officer's testimony did not violate
this rule because it did not correlate Emerson's HGN test performance to a precise BAC. See id.

 The State's evidence did cross the Emerson line in Smith where the officer testified to the
following:

 There are a total of six clues. And any four or more clues would indicate a high level
of intoxication, over a 0.08. And there is an eighty-eight percent chance on this test
alone, this one test with no other indicator, you don't smell alcohol or anything else,
nothing else to indicate intoxication, by this one test there is an eighty-eight percent
chance of [sic] that person is intoxicated on some kind of drugs or alcohol.


Smith v. State, 65 S.W.3d 332, 344 (Tex. App.--Waco 2001, no pet.). The Waco court concluded 
the State "essentially asked [the officer] to correlate Smith's performance on the HGN test to a
conclusion that his blood-alcohol content exceeded the legal limit." Id. at 345. Such testimony was
an impermissible correlation. See id.

 The Waco court found another impermissible correlation when the State asked the arresting
officer "how many clues from the HGN test are necessary 'to indicate that [a suspect] would have
a blood alcohol content that would make him legally intoxicated for driving purposes,'" to which the
officer responded, "Four clues would give about a [sic] 75 percent test subjects being over 0.10
blood alcohol concentration." Webster v. State, 26 S.W.3d 717, 723 (Tex. App.--Waco 2000, pet.
ref'd). By asking the officer to correlate the performance on the HGN test to a BAC in excess of the
legal limit, the State impermissibly attempted to estimate Webster's BAC based on his HGN test
performance in violation of the rule in Emerson. See id.

 Here, the State first questioned Robertson about the HGN test and what the results of the
HGN test mean:

 State: Officer, real quick now, I touched on this in voir dire but very poorly. 
If you would, briefly explain to the jury what horizontal gaze nystagmus is?


 Officer: Okay. Horizontal gaze nystagmus is a way to indicate of [sic] alcohol
in your body. Nothing else will cause your eyes to do this, and what it is, it's a
movement in your eyes, which is a jerking movement. The way we determine this
is if your eyes started jerking before 45 degrees, which would be about even with
your shoulders, then there's a high indication of alcohol present in your system. 
There's also part of the horizontal gaze nystagmus that's called smooth pursuit. When
you turn your eyes back and forth, they should glide really smoothly. If they jerk like
they're on sand paper, there's another indication of alcohol in your system.


 State: Officer, is this something that you learned just from street experience?


 Officer: No, sir, I learned this in the police academy with the Northeast Texas
Police Academy.


 State: It's a police technique that they teach you; is that correct?


 Officer: Yes, sir, we have to be certified as a -


 State: Y'all don't just go out there and start doing this?


 Officer: No, sir.


 State: Somebody taught you how to do it?

 

 Officer: Yes, sir.


 State: Okay. And again, when you're giving this test out there, what [were]
the indications to you?


 Officer: The indications on the defendant was he did not have any smooth
pursuit, which we call lack of smooth pursuit. His onset, which is the jerking
movement, was before 45 degrees. Which gave me enough indication that he did
have some amount of alcohol in his system. The more the eyes jump the more
alcohol that's in the system. Which we also looked for glassiness and bloodshot eyes,
which he had all of.


 State: There again, doesn't tell you a percentage[;] it just tells you alcohol
is present?


 Officer: Yes, sir, it just tells us alcohol is present.

 

From this exchange, it is clear that the State did not seek to elicit testimony that would suggest
Tidwell's HGN test results could be translated into a specific BAC. In fact, Robertson's testimony
limited the implication of the results to the presence of alcohol. Later, after discussing several other
aspects of the night of the arrest, the State continued its direct examination of Robertson:

 State: Officer, again how many arrests have you made for DWI?


 Officer: Well over a hundred.


 State: Okay. And you've observed them at the time that you arrested them
and you observed them at the time they take a BAC test or do an intoxilyzer?


 Officer: Yes, sir.


 State: You can compare that behavior with what the intoxilyzer machine
proved later to be intoxication?


 Officer: Yes, sir.


 Defense: Objection, Your Honor. May we approach.


 The Court: Yes, sir.


 State: I just got to lay the foundation for his opinion. He is more than a lay
witness.


 Defense: But, Your Honor, scientifically there is case law out there
scientifically that the tests that he performed are not sufficient and you cannot use
those tests to establish the specific BAC.


 State: I don't believe anything can be scientific to prove that's not correct. 
But if there's case law I would think so. He's got more - - than a [sic] expert witness.


 When the State asked Robertson whether he "can compare that behavior," it appears that the
State may be coming close to stepping outside the permissible scope of testimony regarding the HGN
test. However, it is not clear from the context whether "that behavior" specifically refers to the HGN
test performance or whether "that behavior" refers to the officer's general observations, as the
previous questions would suggest. To the contrary, after reading a substantial portion of the
preceding testimony, we note that the nearest reference to the HGN testimony is approximately
sixteen pages (2) before the testimony comparing "behavior" to intoxication. That reference is
brief--four questions prompting one- or two-sentence responses--and is limited to the proper
instructions for, and administration of, the HGN test. In fact, this brief testimony along with the
previously-quoted testimony regarding the description of the HGN test are the only two points during
forty pages of direct examination at which Robertson testifies about the HGN test. 

 Further, even assuming that the "behavior" to which the State's question referred is or could
include the HGN test performance, we note that the State's question asked only whether Robertson
"can compare" the "behavior" of several other suspects to subsequent intoxilyzer results. Perhaps
the implication regarding Tidwell's intoxication is there, but the link is tenuous at best because
Robertson never testified that he did compare Tidwell's "behavior" to a specific level of intoxication
and that, based on that comparison, Tidwell's BAC was a certain percentage or fell within a certain
range of BAC.

 Based on our review of the record, the testimony of which Tidwell complains falls short of
the impermissible correlation testimony prohibited by Emerson. Robertson, like the officer in
Emerson, "did not attempt to quantify [Tidwell]'s exact BAC based on [his] perfomance on the HGN
test." Emerson, 880 S.W.2d at 769. Since Robertson never testified that Tidwell's results on the
HGN test correlated to a specific BAC, we overrule Tidwell's first contention.

(2) The Trial Court Was Not Required to Take Judicial Notice of the Location of a Hurricane
and the Status of Any Related Evacuations


 In his second point of error, Tidwell argues that the trial court erred by refusing to take
judicial notice of the presence of Hurricane Emily in the Gulf of Mexico on July 18, 2005. Tidwell's
girlfriend, Natalie Kroskie, testified she and Tidwell had gone to Bossier City, Louisiana, to visit the
casinos on the evening of July 18, 2005. According to Kroskie, after she lost her money, while
Tidwell was winning, and before Tidwell could finish his second beer, the two left the casino. As
they made their way out of town, they stopped at a McDonald's in Shreveport where, Kroskie recalls,
there were several Hurricane Katrina evacuees from New Orleans. 

 It is a well-known and readily ascertainable fact that Hurricane Katrina did not lead to the
evacuation of New Orleans on July 18, 2005. Later, when defense counsel attempted to clarify the
inconsistency, Tidwell testified that Kroskie must have confused that visit to Shreveport/Bossier City
with a subsequent visit because he, too, remembered the New Orleans residents gathered at the
McDonald's. At that point, Tidwell's trial counsel requested the trial court take judicial notice that
Hurricane Emily, not Katrina, was in the Gulf of Mexico at that time and had caused the evacuation
of South Texas and Southern Louisiana. 

 The State opposed the taking of judicial notice presumably since the anachronism undermines
Kroskie's account of the night. The trial court refused to take judicial notice of the requested facts:
"I'm not going to comment one way or the other on the evidence that's before the jury. So I'm going
to overrule the-that motion." The State seized on Kroskie's faulty memory regarding Hurricane
Katrina during closing argument: "we caught someone in a prefabrication." 

 The Texas Rules of Evidence govern judicial notice of adjudicative facts (3) and, in pertinent
part, provide the following:

 (a) Scope of Rule. This rule governs only judicial notice of adjudicative
facts.


 (b) Kinds of Facts. A judicially noticed fact must be one not subject to
reasonable dispute in that it is either (1) generally known within the territorial
jurisdiction of the trial court or (2) capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned.


 (c) When Discretionary. A court may take judicial notice, whether
requested or not.


 (d) When Mandatory. A court shall take judicial notice if requested by a
party and supplied with the necessary information.


Tex. R. Evid. 201. Since Tidwell contends the trial court should have granted his request to take
judicial notice that Hurricane Emily was in the Gulf on July 18, 2005, and that people evacuated
South Texas and southern Louisiana, we examine whether those facts are of the types that can be
judicially noticed under subsection (b) and whether the trial court was required to take judicial notice
of those facts under subsection (d).

 (a) Nature of the Facts at Issue

 Taking judicial knowledge of any fact is subject to the test of "verifiable certainty." See
Eagle Trucking Co. v. Tex. Bitulithic Co., 612 S.W.2d 503, 506 (Tex. 1981); 1.70 Acres v. State, 935
S.W.2d 480, 489 (Tex. App.--Beaumont 1996, no writ). Generally, courts may take judicial notice
of the location of cities, counties, boundaries, dimensions, and distances, because geographical facts
such as these are easily ascertainable and capable of verifiable certainty. See 1.70 Acres, 935 S.W.2d
at 489; Butts Retail, Inc. v. Diversifoods, Inc., 840 S.W.2d 770, 774 (Tex. App.--Beaumont 1992,
writ denied). On the other hand, "such variables as a vehicle's speed, road construction or repairs,
weather, traffic, or accidents may be matters in someone's personal knowledge, they are not
necessarily matters subject to judicial review." 1.70 Acres, 935 S.W.2d at 489 (ultimately
concluding that trial court could not take judicial notice of ten-minute time span to drive alleged
distance of 9.2 miles).

 Though perhaps not necessarily subject to judicial notice, there are instances in which Texas
courts have judicially noticed weather conditions. For instance, in J. Weingarten, Inc. v. Tripplett,
530 S.W.2d 653, 656 (Tex. Civ. App.--Beaumont 1975, writ ref'd n.r.e.), the court concluded that
"[w]e are permitted to take judicial knowledge of a weather report for a particular day." See also
Tex. & P. Ry. Co. v. Greene, 291 S.W. 929 (Tex. Civ. App.--Fort Worth 1927), aff'd, 299 S.W. 639
(1927) (in determining the time of sunset on date certain, stating that "we call attention to the fact
that, from the weather report, of which we think we may take Judicial notice, on the date of the
accident the sun set at 6:40 p.m.").

 More recently, caselaw has further developed the understanding of what facts are "capable
of accurate and ready determination by resort to sources whose accuracy cannot reasonably be
questioned." Specifically, the Houston First Court of Appeals took judicial notice of closures due
to evacuation in preparation for Hurricane Rita in Garcia v. Vera, No. 01-05-01161-CV, 2006 Tex.
App. LEXIS 8701, at *7 (Tex. App.--Houston [1st Dist.] Oct. 5, 2006, no pet.) (mem. op.). The
timeliness of Garcia's motion for new trial was at issue. His motion was due September 23, 2005,
a day that the Harris County courthouse was closed due to the evacuation. Id. at *4. The court took
judicial notice of the "official closing": "We take judicial notice that the district clerk's office was
closed on September 23, 2005, because the Harris County District Clerk has verified that the district
clerk's office was closed on that date." Id. at *7. In light of the "official closing," Garcia's motion
filed on September 26 was timely, and the court of appeals had jurisdiction over the appeal. Id. at
*7-8.

 Even more recently, the Eastland court also took judicial notice of climate conditions and
resulting official actions in Morrow v. Truckload Fireworks, Inc., No. 11-06-00197-CV, 2007 Tex.
App. LEXIS 2252 (Tex. App.--Eastland Mar. 22, 2007, no pet. h.). Morrow involved the county-wide ban of all combustibles. Id. at *1. A fireworks company challenged the ban as it related to
unrestricted fireworks. Id. at *3 n.3. Rain fell in the county, and the ban was lifted before the
appeal, causing the court to examine the circumstances to determine the applicability of the capable-of-repetition-yet-evading-review exception to the mootness doctrine and conclude that the exception
did apply: 

 We can take judicial notice that Midland County's average annual rainfall is 14.80
inches; that in seven of the last ten years Midland County's yearly precipitation was
below average; that in five of these years Midland County received less than ten
inches of rain; and that in December 2005, Midland County issued a similar
fireworks ban. Truckload has advised the court that it and Midland County litigated
a similar ban in 1996. Collectively, this provides a reasonable expectation that
Midland County will continue to suffer from drought conditions, that it will respond
to drought conditions during fireworks seasons by banning the use of all fireworks,
and that Truckload will challenge any ban of nonrestricted fireworks. Consequently,
we believe that the exception applies and that we are not required to dismiss this case
for mootness.


Id. at *5-6. The Eastland court cited the National Oceanic and Atmospheric Administration
(NOAA) website (4) as a source of the rainfall statistics. See id. at *6 n.6.

 It is at least arguable that the location of Hurricane Emily on July 18, 2005, and the existence
of any related evacuations could be facts subject to judicial notice. Although probably not common
knowledge, these facts are likely "capable of accurate and ready determination by resort to sources
whose accuracy cannot reasonably be questioned."

 (b) Trial Court Not Supplied with Necessary Information

 Here, Tidwell provided the trial court with nothing that could serve as a reliable source to
support the "accurate and ready determination" of the location of Hurricane Emily or any related
evacuations. See Tex. R. Evid. 201. In the absence of "the necessary information," the trial court
was not required to take judicial notice of these facts even if the facts were of a nature that could
have been proven by supplying the necessary information. See Tex. R. Evid. 201(d). Again
overlooking the concerns regarding relevance, (5) we conclude that, on this record, the trial court did
not  err  by  refusing  to  take  judicial  notice  that  Hurricane  Emily  was  in  the  Gulf  of  Mexico
on July 18, 2005, and had caused a number of people to evacuate and, possibly, take shelter in the
McDonald's in Shreveport. We overrule Tidwell's second point of error.

 We conclude that Robertson's testimony did not improperly correlate Tidwell's performance
on the HGN test to a precise BAC or an estimated range of BAC. Further, although the location of
Hurricane Emily and any related evacuations may be judicially noticed under the proper
circumstances, here, the trial court was not required to do so in the absence of any reliable source
that could speak to aid in the accurate and ready determination of the facts at issue. 

 Accordingly, we affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 10, 2007

Date Decided: May 9, 2007


Do Not Publish
1. Tidwell also cites Ellis v. State, 86 S.W.3d 759, 760 (Tex. App.--Waco 2002, pet. ref'd),
and O'Connell v. State, 17 S.W.3d 746, 748 (Tex. App.--Austin 2000, no pet.), to support his
contention. While these cases rely on Emerson as it relates to other issues concerning HGN
testimony, we find them to be inapposite to the issue here concerning the scope of the officer's HGN
testimony. Ellis deals with the certification of the officer that administered the HGN test and his
failure to follow the proper procedure in the administration of the HGN test. See Ellis, 86 S.W.3d
at 760. The O'Connell court concluded the trial court erred by including, over appellant's objection,
an instruction in the jury charge regarding the fact that the trial court took judicial notice of the
reliability of the HGN test. See O'Connell, 17 S.W.3d at 748.
2. Intervening topics included, inter alia, Tidwell's refusal of the portable breath test, his arrest,
the functioning of the audio-visual equipment in the police unit, impounding procedure, open
container search, and Tidwell's intended destination.
3. The scope of Texas Rule of Evidence 201 is limited to judicial notice of adjudicative facts. 
Adjudicative facts are "facts about the particular event which gave rise to the lawsuit and, like all
adjudicative facts, . . . [help] explain who did what, when, where, how, and with what motive and
intent." [citation omitted]. Emerson, 880 S.W.2d at 765. In contrast, legislative facts are ordinarily
general and "are those which help the tribunal to determine the content of law and policy and to
exercise its judgment or discretion in determining what course of action to take, and do not concern
[only] the parties. Id. at 764; Aguirre v. State, 948 S.W.2d 377, 380 (Tex. App.--Houston [14th
Dist.] 1997, pet. ref'd).
4. Specifically, the Morrow court cited www.srh.noaa.gov/maf/HTML/100TESTMAF.htm.
5. We note that the jury was able to believe Kroskie's testimony that Tidwell was in no way
impaired as the two drove home without knowing the location of Hurricane Emily on July 18, 2005. 
Further, Tidwell explained that Kroskie could have been confused as to the visit. The State did use
this inconsistency, however, during closing argument to suggest that Kroskie was untruthful.



174>
 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00011-CR

                                                ______________________________

 

 

                                ELIZABETH ROSHEA HILL,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 114th
Judicial District Court

                                                             Smith County, Texas

                                                       Trial Court
No. 114-0499-10

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Elizabeth
Roshea Hill appeals from the revocation of her community supervision.[1]  She had been convicted of driving while
intoxicated with a child passenger, and given a two-year probated
sentence.  On an application for
revocation of community supervision, Hill pled true to the allegations, and was
sentenced to fifteen months incarceration in a state-jail facility.   

            Hills
attorney on appeal has filed a brief which discusses the record and reviews the
proceedings in detail.  Counsel has thus
provided a professional evaluation of the record demonstrating why, in effect,
there are no arguable grounds to be advanced. 
This meets the requirements of Anders
v. California, 386 U.S. 738 (1967); Stafford
v. State, 813 S.W.2d 503 (Tex. Crim. App. 1981); and High v. State, 573 S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

            Counsel
mailed a copy of the brief and a letter to Hill on March 6, 2011, informing
Hill of her right to file a pro se response and to review the record.  Counsel has also filed a motion with this
Court seeking to withdraw as counsel in this appeal.  

            Hill
has neither contacted this Court, nor has she filed a pro se response.

            We
have determined that this appeal is wholly frivolous. We have independently
reviewed the clerks record and the reporters record, and find no genuinely
arguable issue.  See Halbert v. Michigan, 545 U.S. 605, 623 (2005).  We, therefore, agree with counsels
assessment that no arguable issues support an appeal.  See
Bledsoe v. State, 178 S.W.3d 824, 82627 (Tex. Crim. App. 2005).  

            Having
found no genuinely arguable issue for appellate review, we find the appeal to
be frivolous.  Consequently, we affirm
the judgment of the trial court.[2]

 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          May
16, 2011

Date Decided:             May
18, 2011

 

Do Not Publish











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Govt Code Ann. § 73.001
(Vernon 2005).  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.





[2]Since
we agree this case presents no reversible error, we also, in accord with Anders, grant counsels request to
withdraw from further representation of appellant in this case.  No substitute counsel will be appointed.  Should appellant wish to seek further review
of this case by the Texas Court of Criminal Appeals, appellant must either
retain an attorney to file a petition for discretionary review or appellant
must file a pro se petition for discretionary review.  Any petition for discretionary review must be
filed within thirty days from the date of either this opinion or the last
timely motion for rehearing that was overruled by this Court.  See
Tex. R. App. P. 68.2.  Any petition for discretionary review must be
filed with this Court, after which it will be forwarded to the Texas Court of
Criminal Appeals along with the rest of the filings in this case.  See
Tex. R. App. P. 68.3.  Any petition for discretionary review should
comply with the requirements of Rule 68.4 of the Texas Rules of Appellate
Procedure.  See Tex. R. App. P.
68.4.