Justin Douglas WILKINS, Appellant,

v.

STATE of Texas, Appellee.

No. 11–96–193–CR.

Court of Appeals of Texas,
Eastland.

Jan. 29, 1998.

Frank E. Griffin, Brownwood, for appellant.

G. Lee Haney, Dist. Atty., Brownwood, for appellee.

Before DICKENSON and WRIGHT, JJ., and AUSTIN McCLOUD, Senior Justice.*

## OPINION

WRIGHT, Justice.

The jury convicted Justin Douglas Wilkins of aggravated kidnapping and aggravated sexual assault and assessed his punishment at confinement for 60 years for each offense. They also assessed a fine of $5,000 for each offense. We affirm.

### Summary of Facts

A four-year-old girl, K.R.P., was kidnapped, sexually assaulted, strangled, and left for dead in an old dump area in Brown County, Texas, during the cold, early morning hours of February 11, 1996. She had been taken from an apartment at the Sunset Terrace Apartments where she lived with her mother and her mother's friend. Appellant was at the apartment and, as he was leaving, saw K.R.P. asleep on the couch. He

picked her up and carried her into the dump area behind the apartments to have sex with her. She woke up and began to cry as he was carrying her away from the apartments. He carried her about 100 yards from the apartment, stopped, sat her down, and began to use his finger to repeatedly penetrate her vagina. The little girl continued to cry. Appellant became worried that someone would hear her. To make her be quiet, appellant choked her until she became quiet and limp. Believing that he had killed her, appellant picked up the little girl, threw her into a nearby ravine, and went to the apartment where he and his parents were staying. Appellant was in an upstairs room asleep.

At approximately 4:00 a.m. on February 11, 1996, Troy Allen Carroll, a patrolman with the Brownwood Police Department, responded to the report of a possible kidnapping from an apartment at the Sunset Terrace Apartments. His investigation revealed that appellant had been at the apartment and that he had left at approximately 2:00 a.m. Between 4:30 and 5:30 a.m., an officer contacted appellant by telephone. Appellant denied having been at the Sunset Terrace Apartments and told the officer that he had been at home with his parents for the entire evening. A short time later, appellant's parents came to the Sunset Terrace Apartments and, among other things, indicated to the police that appellant had been with them at home all night.

Sometime later in the morning, Officer James Arthur Shannon went to the apartment where appellant and his parents were staying. He went there to discuss the inconsistent information that the police had received regarding the whereabouts of appellant at the time of the victim's disappearance. Appellant's parents answered the door. They both appeared to be very upset. Finally, appellant's father told Officer Shannon that appellant had said that he "had done something with the body." Officer Shannon went upstairs to the room where appellant was sleeping, awakened him, arrested him, handcuffed him, gave him the first of several

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

*Miranda*[1] warnings, and took him to the Brownwood Police Station.

Detective Dennis Weathermon interviewed appellant at the police station. Prior to the interview, Detective Weathermon gave appellant a preprinted "Waiver–of–Rights Form," read it to him, and made sure that appellant understood it. Appellant read the form himself and signed it. Although contested, Detective Weathermon testified that appellant neither requested a lawyer nor asked to stop the interview.

During the interview, appellant indicated to Detective Weathermon that it was possible that the victim was still alive, and he offered to show him where he had left her. Using the information given to them by appellant, several officers began searching the area behind the apartments and, eventually, found the victim alive.

After returning to the police station, appellant was interviewed a second time by Detective Weathermon. Again, Detective Weathermon advised appellant of his rights, and appellant signed another preprinted "Waiver–of–Rights Form." He also gave a written statement. After transcribing the statement, Detective Weathermon gave it to appellant and told him to read it to see that it was true and correct to the best of his knowledge. Appellant appeared to read the statement, did not ask any questions about the statement, did not ask to change any part of it, and signed it in the presence of Detective Weathermon and Police Officer Robert Mullins. The *Miranda* rights were also printed on the first page of the statement form. There is evidence that appellant did not ask to speak with an attorney during the taking of this statement nor did he indicate that he wanted to stop talking.

### Motion to Suppress

■ Appellant argues in his first point of error that the trial court erred when it failed to suppress his confession and evidence obtained as a direct result of the confession because it was obtained as a result of an illegal "warrantless arrest and illegal detention."

■ It is undisputed that Officer Shannon arrested appellant without a warrant. The situations in which warrantless arrests are permitted in Texas are found in Chapter 14 of the Texas Code of Criminal Procedure.[2] The burden is on the State not only to prove the existence of probable cause to justify a warrantless arrest but, also, to prove that the warrantless arrest falls within one of the provisions of Chapter 14. *Amores v. State,* 816 S.W.2d 407, 413 (Tex.Cr.App.1991); see also *Fry v. State,* 639 S.W.2d 463, 465 (Tex. Cr.App.1982).

The Court of Criminal Appeals has determined that probable cause exists:

> [W]here the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense.

*Amores v. State, supra.*

The officers had information that appellant had been at the victim's apartment even though appellant and his parents had denied his being there. Later, when Officer Shannon went to the apartment where appellant was staying, appellant's parents were visibly upset. They told Officer Shannon that appellant was involved in the little girl's disappearance and that appellant had indicated that he "got rid of the body." We believe that the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information warranted a person of reasonable caution in the belief that appellant had committed an of-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. We note that appellant does not claim that the warrantless arrest procedure violated either the United States Constitution or the Texas Constitution. Appellant addresses only Chapter 14 of the Texas Code of Criminal Procedure. Chapter 14 of the Texas Code of Criminal Procedure provides greater strictures upon the ability of law enforcement officers to arrest persons without a warrant than does either Constitution. Decisions under both the United States Constitution and the Texas Constitution permit warrantless arrests under general exigency considerations when the police activity is reasonable; Chapter 14 does not.

fense. The officers had probable cause to arrest appellant without a warrant.

Under Texas law, that does not end the inquiry. Though constitutionally firm, a warrantless arrest could violate the Texas statutes if it does not come within an exception enumerated in Chapter 14. However, even if the warrantless arrest was not authorized by Chapter 14, the statements and the subsequent discovery of the various items of evidence are admissible if they are sufficiently attenuated from any claimed taint of illegality. To determine whether the taint of an illegal arrest was attenuated from appellant's statement, we consider four factors:

(1) Whether *Miranda* warnings were given;

(2) The temporal proximity of the arrest and the confession;

(3) The presence of intervening circumstances; and

(4) The purpose and flagrancy of the official misconduct.

*Brown v. Illinois*, 422 U.S. 590, 603–604, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975); *Johnson v. State*, 871 S.W.2d 744, 751 (Tex. Cr.App.1994). All four factors must be considered, and no one factor is dispositive. *Johnson v. State*, supra.

The record reflects that appellant received *Miranda* warnings four times. First, Officer Shannon testified that he informed appellant of the rights at the time of arrest. Approximately one hour later, Detective Weathermon gave appellant a pre-printed "Waiver–of–Rights Form" which contained the required *Miranda* warnings. Appellant read the form and then signed it. After telling the police where to locate the little girl, appellant was again given a pre-printed "Waiver–of–Rights Form." He signed that form at 10:45 a.m. before being interviewed a second time by Detective Weathermon. Appellant later gave a voluntary statement detailing what he had done to the little girl. Detective Weathermon testified that appellant appeared to read the statement. The *Miranda* rights were printed on the statement form. Appellant signed the statement at 12:10 p.m. We recognize that *Miranda* warnings alone are not enough

to attenuate the taint of an illegal arrest but that they are an important factor in our analysis. *Maixner v. State*, 753 S.W.2d 151, 156 (Tex.Cr.App.1988).

Temporal proximity, however, is a more ambiguous factor and does not carry as much weight as the giving of *Miranda* warnings. *Maixner v. State*, supra. Appellant was arrested at 8:12 a.m. Detective Weathermon began interviewing appellant at 9:00 a.m. Appellant signed a voluntary confession at 12:10 p.m. Approximately three hours elapsed between the initial interview and the time when appellant signed the voluntary statement. There was close temporal proximity between the time of the arrest and the time of the statement.

We next must examine any intervening circumstances that occurred between the arrest and the confession. There is no indication in the record that an event such as taking appellant before a magistrate, procuring an arrest warrant, or releasing him from custody occurred. See *Johnson v. State, supra; Maixner v. State, supra; Self v. State*, 709 S.W.2d 662, 667 (Tex.Cr.App.1986).

Finally, we consider the purpose and flagrancy of the official misconduct. The record is clear that the primary objective of the law enforcement officers was to locate the victim alive. The little girl was four years old. She had been missing for several hours. She was wearing only a nightgown and panties. She possibly had a blanket with her. It was early morning in February, and the temperature outside was very cold. According to the officers, finding the little girl alive was the overriding concern, the paramount consideration. Furthermore, the testimony showed that, if they were to have pursued a warrant, it would have been necessary to remove officers from the search to watch the apartment where appellant was staying while the warrant was being secured. The evidence further revealed that it would have taken at least two hours to locate a magistrate and secure an arrest warrant, and the officers did not feel that they had two hours to spare given the dire circumstances of the young victim. Perhaps the officers should have sought a warrant, but their actions in failing to do so "cannot be characterized as

either flagrant or purposeful" nor were their actions "deliberately calculated to deny appellant the full benefit and free exercise of his rights." See *Maixner v. State,* supra at 157.

The purpose of the inquiry into the four factors is to determine whether the statement is actually the product of an illegal arrest. In other words, was there a causal connection between the arrest and the giving of the statement? As we have previously stated, Officer Shannon had probable cause to arrest appellant. In addition, appellant was given *Miranda* warnings repeatedly, and he repeatedly waived them. The record supports the trial judge's findings that appellant did not request an attorney and did not ask that questioning stop. Furthermore, the record does not reflect flagrant police misconduct. See *Brown v. Illinois, supra; Self v. State, supra.* After reviewing all four factors and assuming without deciding that appellant's warrantless arrest was not authorized by the statute, the arrest was sufficiently attenuated from appellant's confession to purge any taint.

The trial court did not abuse its discretion when it overruled appellant's motion to suppress his confession and the evidence obtained as a result of that confession. Appellant's first point of error is overruled.

### *Sufficiency of the Evidence*

 In appellant's second point of error, he challenges the legal and factual suffi-ciency of the evidence. When appellant raises both legal and factual sufficiency of the evidence, we first evaluate the legal sufficiency. *Clewis v. State,* 922 S.W.2d 126 (Tex.Cr. App.1996). We review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clewis v. State, supra; Geesa v. State,* 820 S.W.2d 154 (Tex.Cr. App.1991). In reviewing the factual sufficiency of the evidence, we must consider all of the evidence to determine if the verdict is so against the great weight of the evidence as to be clearly wrong and unjust. *Clewis v. State, supra.*

We have reviewed the entire record and have concluded that the evidence was both legally and factually sufficient to support appellant's conviction. The second point of error is overruled.

### *This Court's Action*

The judgment of the trial court is affirmed.