Verne Lundquist BUTLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00085–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 2, 1998.

Decided Jan. 28, 1999.

John Tatum, Dallas, for appellant.

Anne Wetherholt, Asst. Dist. Atty., Sue Korioth, Asst. Dist. Atty., Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Verne Butler appeals from his conviction by a jury for the offense of aggravated robbery. The jury assessed his punishment at twenty-five years' imprisonment and a $5,000 fine.

Butler contends on appeal that the court erred by overruling his motion to suppress written and oral statements and certain items found on his person, by denying a motion for mistrial based upon a juror's failure to inform counsel during voir dire that she knew one of the witnesses, and by denying a motion for continuance sought to obtain time to investigate a partial fingerprint taken from the stolen automobile. He also contends that the evidence is legally and factually insufficient to support the verdict.

The evidence shows that John Holyfield, a 65–year–old man, was attacked in Dallas

by a young man carrying a pistol. The young man was accompanied by a pregnant girl. At the time of the attack, Holyfield was returning from a store while his wife waited in their car. Holyfield was attacked while entering his car. As his wife escaped, leaving her purse in the car, Holyfield fought with his pistol-wielding attacker. Heeding his wife's screams to let them have the car, Holyfield desisted, and the attacker and his companion climbed into Holyfield's new Dodge Intrepid and sped away. Although both Holyfield and his wife saw the attacker, both told police that they did not see his face clearly enough to identify him, and when presented with photo lineups, they were not able to do so.

That night, a state trooper on an interstate highway south of Dallas clocked a Dodge Intrepid traveling at over one hundred miles per hour. A high-speed chase ensued off the interstate highway, through Corsicana, and back onto the interstate. By this time, local police were also pursuing the car, which had hit two cars while careening through town. The driver finally lost control and wrecked the car in a pasture. The driver ran away. This Intrepid was later proven to be Holyfield's car.

When the trooper looked through the car, he saw a black purse with various other items, including peppermint candies, costume jewelry, and dried black-eyed peas. Holyfield's wife testified that she had about $200 in cash, glasses, credit cards, peppermints, and black-eyed peas (for luck) in her purse when the car was stolen.

The car was wrecked about 150 yards away from the home of the chief of police for the City of Rice. He was home at the time, listening to the chase on his police scanner. When he realized how close to his home the car was, he went out and got into a squad car and headed up the road. He testified that his car had no light bar on top, and only a small emblem on the side, so it was not instantly recognizable as a police car. When he arrived at the wreck, officers told him that they were looking for a black male, so he began driving down the service road. Butler, a black male, flagged the chief down. The chief turned on his flashing lights, and Butler turned and walked away.

The chief brought Butler to the car and began to question him. Butler gave him a name and said he was from "here." Because Rice is a town of about 500, and because the chief was acquainted to some degree with everyone in town, he did not believe Butler. Butler's story then changed to suggest that he was staying with a cousin, but the cousin's name was not familiar to the chief either. Butler was sweating, was covered with leaves and grass, and was scratched. The chief asked Butler where "here" was, and Butler answered "Dallas." The chief handcuffed Butler, placed him in the front seat of the car, and took him to the site of the wreck, where the chief turned Butler over to a state trooper.

Butler refused to provide a name to the police. Upon being informed that his fingerprints would identify him, he said that his name was Verne Butler. He was searched, and police found $221.35 in American currency. They also found wrapped peppermint candies and some dried black-eyed peas.

Two weeks later, the Dallas detective who was handling the case went to Navarro County to interview Butler. At that time, Butler made a written statement in which he admitted complicity in the robbery, but stated that the girl actually had used the gun to get the woman out of the car and that he had driven it away. He then stated that the girl had left him when he stopped at a convenience store.

Butler first contends that the trial court erred by overruling his motion to suppress his written statement in which he denied attacking Holyfield but admitted participating in the robbery, and an oral comment that he made to the arresting state

trooper while he was en route to jail, to the effect that "You-all couldn't catch me." He bases his contention upon his claim that his arrest was illegal.

■ At a hearing on a motion to suppress evidence, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and the weight given their testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997). Therefore, an appellate court must view the record and draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). Furthermore, the appellate court must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.*

■ The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We are also to afford such deference to a trial court's ruling on the "application of law to fact questions" if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. Questions not turning on credibility and demeanor may be reviewed by appellate courts *de novo. Id.; Hernandez v. State*, 957 S.W.2d 851, 852 (Tex.Crim.App.1998).

Butler contends that when he was arrested and the chief of police handcuffed him and placed him in his squad car, the chief had no warrant and had no probable cause to justify arresting him as permitted by TEX.CODE CRIM. PROC. ANN. arts. 14.01, 14.04 (Vernon 1977), and art. 14.03 (Vernon Supp.1999). Thus, he contends that the evidence was inadmissible because it was the fruit of an unlawful arrest. At the

time of the arrest, officers were not aware that the car had been stolen. The officers observed the driver of the Intrepid committing the offenses of speeding and evading arrest, and the evidence shows that their radio communications, which were heard by the chief, reflected their observations.

■ Article 14.01(b) provides that a peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view. This is read to require that the events perceived by the officer must link the suspect with a criminal act. *Lunde v. State*, 736 S.W.2d 665, 667 (Tex.Crim.App.1987). Thus, a warrantless arrest may be made if there is probable cause to believe that a person has committed or is committing a crime, and under the further requirements of Article 14.01(b), if the probable cause arises from matters observed by the arresting officer. *See Adkins v. State*, 764 S.W.2d 782, 785 (Tex.Crim.App.1988); *Peddicord v. State*, 942 S.W.2d 100, 109 (Tex.App.-Amarillo 1997, no pet.).

■ The test for probable cause for a warrantless arrest under this provision is whether, at that moment, the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (arrested) person had committed or was committing an offense. *Lunde*, 736 S.W.2d at 667 (*citing Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

The Court of Criminal Appeals has repeatedly held that knowledge sufficient to establish probable cause to believe an offense was then occurring may be based upon the officer's personal knowledge or on reasonably trustworthy information coupled with personally observed behavior,[1] even if the observed behavior is not overtly criminal. *See generally, Beverly*

**1.** *Wilkins v. State*, 960 S.W.2d 429, 431 (Tex. App.-Eastland 1998, pet. ref'd).

*v. State,* 792 S.W.2d 103, 105 (Tex.Crim. App.1990); *Lunde,* 736 S.W.2d at 667.

■ Thus, the test of probable cause for a warrantless arrest is whether, at that moment, the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the arrested person had committed or was committing an offense. *Garrison v. State,* 726 S.W.2d 134, 137 (Tex.Crim.App.1987) (*quoting Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). When several officers are involved in investigating a crime, the sum of information known to cooperating officers at the time of arrest is to be considered in determining whether probable cause to arrest existed. *Garrison,* 726 S.W.2d at 137; *Woodward v. State,* 668 S.W.2d 337 (Tex.Crim.App.1982); *State v. Rivenburgh,* 933 S.W.2d 698, 701 (Tex. App.-San Antonio 1996, no pet.).

■ In this case, the chief of police knew from police communications and his personal observations that other officers were involved in a high-speed chase with a car that was attempting to escape from them, that the vehicle had damaged other cars while racing through town, and that the chase had ended when the car crashed through a fence and mesquite trees, ending in a field in very close proximity to his own home. The chief had been informed that the driver, a black male, was not in the vehicle and could reasonably conclude that he was attempting to escape on foot. The chief was then flagged down by a black male who showed visible and considerable signs of superficial injury, who was covered with grass and leaves, and who was sweating heavily, very near the site of the accident. That individual, upon discovering that his rescuer was a police officer, then attempted to flee and lied about his identity. Based upon all of these factors, it was reasonable for the officer to conclude that the individual involved was probably the driver, and thus, he had probable cause to believe that the offense of evading arrest was still in progress.

The chief of police did not personally observe Butler committing the offenses of speeding and eluding arrest while in the vehicle. He had received information, however, both from his communications with other officers and his personal observations, showing that those offenses had occurred. In addition, the other officers at the site of the wreck had informed him that the driver, a black male, was fleeing from officers who sought to arrest him in connection with the offenses. Eluding arrest is a criminal offense. TEX. PEN.CODE ANN. § 38.04(a) (Vernon 1994).

■ Thus, the trial court had before it evidence from which it could conclude that an offense was in progress at the time of the arrest and that an offense was committed in the presence of the officer. Accordingly, the trial court could conclude that the warrantless arrest was lawful and that the statements were admissible.[2] We find that the court did not abuse its discretion, and Butler's arguments based upon an allegedly illegal arrest fail.[3]

Butler next contends that the trial court erred by denying his motion for mistrial after a juror informed the court during the trial that her husband worked for the same business as Holyfield's wife. The juror stated that her husband had informed her about the robbery.

There are a number of cases reviewing situations where a potential juror misleads

---

**2.** On this basis, defense counsel had also challenged the admission of items recovered from the defendant's pockets. At trial, however, he stated that he had no objection to the admission of the black-eyed peas and peppermints into evidence. This affirmative acceptance of previously challenged evidence waives any er-

ror in its admission. *Jones v. State,* 833 S.W.2d 118, 126 (Tex.Crim.App.1992).

**3.** In response to Butler's argument that the police chief may have been outside his jurisdiction, we note the complete absence of any evidence on this question.

counsel during voir dire, either intentionally or accidentally. *Salazar v. State,* 562 S.W.2d 480 (Tex.Crim.App. [Panel Op.] 1978), and its predecessors stand for the proposition that when a potential juror's answers to questions asked during voir dire are untruthful, thus misleading counsel, reversal is both appropriate and necessary.[4] Similarly, in *Von January v. State,* 576 S.W.2d 43 (Tex.Crim.App. [Panel Op.] 1978), the court held that when a partial, biased, or prejudiced juror is selected without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon answers given to him on voir dire, not knowing them to be incorrect, good ground exists for new trial. *Von January v. State,* 576 S.W.2d at 45, (*citing Norwood v. State,* 123 Tex.Crim. 134, 58 S.W.2d 100 (1933), and cases cited therein).

Application of this concept also requires that the information withheld be material in nature. When a juror withholds material information in the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury. *Armstrong v. State,* 897 S.W.2d 361, 363 (Tex.Crim.App.1995); *Salazar,* 562 S.W.2d at 482. In *Von January,* such materiality was apparent, and despite the juror's statement that he could be unbiased, bias was presumed by the reviewing court because of the lengthy association and relationship between the victim and the juror at issue.

■ In the present case, however, such a situation does not appear in the record. The judge questioned the juror about her knowledge. She stated that she did not know Holyfield's wife. She knew only that her husband and Holyfield's wife worked together, and stated that her husband had told her about the robbery. Counsel had

asked the jurors if they knew the witnesses. Her negative answer was accurate. Thus, no error is shown. This contention of error is overruled.

■ Butler next contends that the court erred by denying his request for a continuance. During trial, testimony was elicited that a partial latent fingerprint was recovered from the interior of the stolen car by local authorities, but that the print was not transferred to the Dallas police department. Butler sought a continuance to further investigate the latent fingerprint to determine whether it was exculpatory. The request was denied. The trial court's ruling on a motion for continuance is reviewed for abuse of discretion. *Heiselbetz v. State,* 906 S.W.2d 500 (Tex.Crim.App.1995).[5] To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion. *Janecka v. State,* 937 S.W.2d 456, 468 (Tex.Crim. App.1996); *Heiselbetz,* 906 S.W.2d at 511.

■ Butler asserts he was unable to adequately prepare his defense because the latent fingerprint may have belonged to some other person and might have been exculpatory. However, he does not establish any specific prejudice to his case as required under *Janecka, supra.* Therefore, the court's denial of his request for more time to have a partial fingerprint examined does not establish an abuse of discretion.

■ Further, the weight of authority reflects that a motion for continuance must be in writing. No such motion was filed in this case; thus, the issue has not been preserved for appellate review. *Matamoros v. State,* 901 S.W.2d 470, 478 (Tex. Crim.App.1995). The contention of error is overruled.

---

4. The court in *Salazar* stated that if the information withheld was not material and the juror stated that it would not affect his deliberation or verdict, an appellant might be unable to show harm. 562 S.W.2d at 482, n5.

5. *See* Tex.Code Crim. Proc. Ann. arts. 29.03, 29.06(6) (Vernon 1989).

Butler next contends that the court erred by admitting into evidence oral comments made by Butler to police officer Jason Waldrip while that officer was transporting him to jail after his arrest. This argument is based solely upon his prior contention that the initial arrest was unlawful. He does not contend that there was any issue concerning questions of improper custodial interrogation, and the record reflects that the statements were not made by Butler in response to any form of questioning by the officer. We have previously concluded that the initial arrest was lawful; thus, this argument likewise fails. This contention of error is overruled.

Butler next contends that the evidence is both legally and factually insufficient to support his conviction. In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim. App.1991), and look to see whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

In our review of the factual sufficiency of the evidence, we view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Examples of such a wrong and unjust verdict include instances in which the jury finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Clewis*, 922 S.W.2d at 135. If we find factual insufficiency, we vacate the conviction and remand for a new trial. *Jones*, 944 S.W.2d at 648, *Clewis*, 922 S.W.2d at 133–35.

We have previously set out the majority of the evidence. Butler made a written statement in which he inculpated himself as a party to the crime. He bragged to one of the police officers that "You-all couldn't catch me." The circumstantial evidence discussed above provides proof that Butler fled in a stolen car. A plastic ATM card belonging to Holyfield's wife, with a number corresponding to the one on a paper in Butler's pocket, was found inside the car. Butler had slightly over $200 in currency in his pocket when he was arrested, which was the approximate amount taken from Holyfield's wife's purse, as well as some dried black-eyed peas, which she also testified were in her purse, and wrapped peppermint candies of the type that she had in her purse prior to the robbery.

This evidence is both legally and factually sufficient to support the jury's verdict. These contentions of error are overruled.

The judgment is affirmed.