In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00196-CR


______________________________




TRACEY WILCOX RHOADES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. CR01-055




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Cornelius




_______________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

O P I N I O N



 Tracey Wilcox Rhoades appeals her conviction, on her plea of guilty pursuant to a plea
bargaining agreement, to possession of a controlled substance, a second degree felony. The trial
court deferred an adjudication of guilt, placed Rhoades on community supervision for seven years,
and required her to pay restitution of $140.00. Rhoades filed a pretrial motion to suppress evidence
of the contraband on the grounds that it was the product of an illegal search. After a hearing on April
11, 2001, the trial court denied the motion. For the reasons below, we affirm the judgment of the
trial court.

 On appeal Rhoades brings a single point of error, in which she challenges the trial court's
denial of her motion to suppress evidence. Rhoades contested the admissibility of evidence seized
during a search incident to her arrest on the ground that the arrest and subsequent search were
unlawful. Rhoades was initially arrested for evading arrest. During a search incident to this arrest,
she was found to be in possession of a quantity of methamphetamine. 

 In denying Rhoades' motion to suppress, the trial court made findings of fact including:

 Officer Floyd Wingo of the Gregg County, Texas, Organized Drug Enforcement
(CODE) unit, received information from a reliable informant that defendant would
be transporting illegal methamphetamine into East Texas. The information received
included a description of the vehicle she would be driving, and the license number.


 Officer Wingo had received information from other sources that Defendant was
involved in illegal drug activities in Gregg and Rusk Counties.


 The information he received indicated that the Defendant would be arriving in the
Gregg County area soon.


 Officer Wingo did not have sufficient time to obtain a warrant.


 The vehicle driven by Defendant was first observed . . . by Officer Wanda Wilkerson
. . . . It was as described by the confidential informant, including the license plate
number.


 Officer Jason Brannon . . . intercepted the vehicle . . . .


 Officer Brannon attempted to stop the vehicle based on the information given to him
by Officer Wingo and Officer Wilkerson.


 Officer Brannon made a reasonable effort to stop the vehicle driven by the Defendant
on the highway. He displayed his badge to Defendant, and asked her to stop.


 Defendant slowed down in response to Brannon's hand signals, but sped off when she
saw Brannon's badge.


 Defendant drove a short distance to her home and pulled into the driveway.


 Agent [sic] Brannon approached her and detained her awaiting the arrival of Officer
Wilkerson.


 Officer Wilkerson searched defendant and found what is alleged to be
methamphetamine in her right shirt pocket.


The trial court also entered the following conclusions of law:


 Officer Wingo had probable cause to believe that the Defendant possessed a
controlled substance during the late afternoon of February 22, 2001, based on
information he received from a confidential informant and other sources.


 Officer Brannon's detention of Defendant was reasonable.


 The search of Defendant by Officer Wilkerson was a reasonable search incident to
arrest.


 At a hearing on a motion to suppress evidence, the trial court is the exclusive trier of fact and
judge of the credibility of the witnesses and the weight to be given their testimony. Green v. State,
934 S.W.2d 92, 98 (Tex. Crim. App. 1996); Butler v. State, 990 S.W.2d 298, 301 (Tex.
App.-Texarkana 1999, pet. ref'd). We therefore view the record and draw all reasonable inferences
therefrom in the light most favorable to the trial court's ruling. Id. at 301. We must sustain the trial
court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable
to the case. 

 When reviewing a trial court's ruling on a motion to suppress evidence, we apply a
bifurcated standard of review. We give almost total deference to the trial court's determination of
the historical facts, as well as mixed questions of law and fact that turn on an evaluation of the
credibility and demeanor of the witnesses. Butler v. State, 990 S.W.2d at 301 (citing Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We review de novo the trial court's application
of the law of search and seizure. 

 Rhoades argues that the general search was not incident to a lawful arrest because she lacked
the requisite intent to commit the offense of evading arrest. See Tex. Pen. Code Ann. § 38.04
(Vernon 1994). She contends that she did not know that the plainclothes officer in an unmarked
truck was a police officer, and so she could not have committed the offense of evading arrest. She
posits that because she did not commit the offense, her original detention was unreasonable and that
the subsequent arrest and the fruit of the search should be inadmissible. 

 This argument seems to be based on the idea that if a person is initially detained on suspicion
of committing an offense, but is later determined to be innocent of that offense, the initial detention
and subsequent arrest are illegal. This is not a correct analysis of the law. Probable cause, not
criminal liability, is the standard for defending the validity of a search incident to an arrest. A police
officer may arrest an individual without a warrant if (a) there is probable cause with respect to that
individual, and (b) the arrest falls within one of the exceptions specified in Tex. Code Crim. Proc.
Ann. arts. 14.01, 14.02, 14.04 (Vernon 1977), art. 14.03 (Vernon Supp. 2002). See Lunde v. State,
736 S.W.2d 665, 666 (Tex. Crim. App. 1987). 

 A warrantless arrest may be made if the officer has probable cause to believe that a person
has committed or is committing a crime, where the probable cause arises from matters observed by
the arresting officer. Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 1977); Butler v. State, 990
S.W.2d at 301. The test for probable cause for a warrantless arrest is whether, at that moment, the
facts and circumstances within the officer's knowledge and of which the officer had reasonably
trustworthy information were sufficient to warrant a prudent man in believing that the (arrested)
person had committed or was committing an offense. Id.

 In determining whether probable cause existed, our evaluation of the facts surrounding the
event is completely objective. Garcia v. State, 827 S.W.2d 937, 942 (Tex. Crim. App. 1992). The
arrest is valid if the police officer had the authority to detain the person, regardless of any underlying
subjective reasons or desires for effecting the arrest.

 The question here is whether, based on the information received from Officers Wingo and
Wilkerson, plus Officer Brannon's observation of Rhoades' behavior, a reasonable person in Officer
Brannon's position would have been warranted in believing that Rhoades had committed or was
committing a crime.

 Rhoades does not directly challenge any of the trial court's findings. Instead, she argues that
other evidence provides another plausible explanation for her behavior. (1) She also points out that the
only evidence that Officer Brannon identified himself as a police officer was his testimony, and that
she testified she never saw a badge or any other indication that he was a police officer. Brannon
testified that Rhoades initially slowed down as he approached her, and she fled only after he
identified himself as a police officer. Thus, the question turns on the credibility of the witnesses. 
Evaluations of credibility lie within the purview of the trial court. Butler v. State, 990 S.W.2d at
301. In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of
the witnesses and the weight to be given their testimony. See Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990). The reviewing court may not disturb the trial court's findings of fact
supported by evidence unless the trial court's act constitutes an abuse of discretion. See Etheridge
v. State, 903 S.W.2d 1, 15 (Tex. Crim. App. 1994). 

 There is sufficient evidence to support the trial court's ruling that Officer Brannon's arrest and
detention of Rhoades was reasonable. The trial court was free to accept Officer Brannon's testimony
and reject that of Rhoades. 

 Rhoades also contends that, based on Florida v. J.L., an anonymous tip is insufficient to
justify a Terry (2) stop. See Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000)
(holding anonymous tip alleging illegal possession of a firearm, but lacking proper indicia of
reliability, does not justify Terry stop). This argument is inapplicable here for two reasons. The
search in this case was conducted as one incident to a lawful arrest, not as a Terry stop. Moreover,
the tip came from a known, reliable informant rather than from an anonymous source. 

 Officer Wingo testified that he had received information from the informant two or three
times in the past and the information had proven reliable. He also testified that the confidential
informant had given specific, separately verifiable information about the type of vehicle, the license
plates, the time of return, and the location of Rhoades' residence. The informant also gave
information that the purpose of the trip was to acquire a quantity of methamphetamine. The officers
verified all of the information, except the possession of methamphetamine, before the search was
conducted. Officer Wingo also testified there was independent evidence that Rhoades was involved
in illegal drug activities. Rhoades did not contest these facts.

 Rhoades points out that the informant related no specific verifiable information about past
tips and that no arrest had been made based on those past tips. She also notes that Officer Wingo
could not remember the time he received the tip. Rhoades argues that these facts tend to undermine
the indicia of reliability of the confidential information. This argument, however, fails to rebut the
State's evidence or otherwise overcome the strong presumption in favor of the court's findings. See
Butler v. State, 990 S.W.2d at 301. There are sufficient facts in the record to support the trial court's
conclusion that Officer Wingo had probable cause to believe that Rhoades possessed a controlled
substance.

 For the reasons stated, the judgment is affirmed.



 William J. Cornelius

 Justice


Date Submitted: May 16, 2002

Date Decided: June 14, 2002


Publish

1. She points to evidence that it was beginning to get dark, that she was alone on a secluded
dirt road where two other women had recently been beaten to death, and that the officer was in an
unmarked vehicle.
2. The rule in Terry permits "stop and frisk" searches for guns, knives, clubs, or other weapons
for the purpose of protecting the police officer and others nearby on the basis of reasonable suspicion
that the subject of the search might be armed and dangerous, rather than demanding that officers
meet the higher standard of probable cause. Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d
889 (1968). 


e following:

 (a) Scope of Rule. This rule governs only judicial notice of adjudicative
facts.


 (b) Kinds of Facts. A judicially noticed fact must be one not subject to
reasonable dispute in that it is either (1) generally known within the territorial
jurisdiction of the trial court or (2) capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned.


 (c) When Discretionary. A court may take judicial notice, whether
requested or not.


 (d) When Mandatory. A court shall take judicial notice if requested by a
party and supplied with the necessary information.


Tex. R. Evid. 201. Since Tidwell contends the trial court should have granted his request to take
judicial notice that Hurricane Emily was in the Gulf on July 18, 2005, and that people evacuated
South Texas and southern Louisiana, we examine whether those facts are of the types that can be
judicially noticed under subsection (b) and whether the trial court was required to take judicial notice
of those facts under subsection (d).

 (a) Nature of the Facts at Issue

 Taking judicial knowledge of any fact is subject to the test of "verifiable certainty." See
Eagle Trucking Co. v. Tex. Bitulithic Co., 612 S.W.2d 503, 506 (Tex. 1981); 1.70 Acres v. State, 935
S.W.2d 480, 489 (Tex. App.--Beaumont 1996, no writ). Generally, courts may take judicial notice
of the location of cities, counties, boundaries, dimensions, and distances, because geographical facts
such as these are easily ascertainable and capable of verifiable certainty. See 1.70 Acres, 935 S.W.2d
at 489; Butts Retail, Inc. v. Diversifoods, Inc., 840 S.W.2d 770, 774 (Tex. App.--Beaumont 1992,
writ denied). On the other hand, "such variables as a vehicle's speed, road construction or repairs,
weather, traffic, or accidents may be matters in someone's personal knowledge, they are not
necessarily matters subject to judicial review." 1.70 Acres, 935 S.W.2d at 489 (ultimately
concluding that trial court could not take judicial notice of ten-minute time span to drive alleged
distance of 9.2 miles).

 Though perhaps not necessarily subject to judicial notice, there are instances in which Texas
courts have judicially noticed weather conditions. For instance, in J. Weingarten, Inc. v. Tripplett,
530 S.W.2d 653, 656 (Tex. Civ. App.--Beaumont 1975, writ ref'd n.r.e.), the court concluded that
"[w]e are permitted to take judicial knowledge of a weather report for a particular day." See also
Tex. & P. Ry. Co. v. Greene, 291 S.W. 929 (Tex. Civ. App.--Fort Worth 1927), aff'd, 299 S.W. 639
(1927) (in determining the time of sunset on date certain, stating that "we call attention to the fact
that, from the weather report, of which we think we may take Judicial notice, on the date of the
accident the sun set at 6:40 p.m.").

 More recently, caselaw has further developed the understanding of what facts are "capable
of accurate and ready determination by resort to sources whose accuracy cannot reasonably be
questioned." Specifically, the Houston First Court of Appeals took judicial notice of closures due
to evacuation in preparation for Hurricane Rita in Garcia v. Vera, No. 01-05-01161-CV, 2006 Tex.
App. LEXIS 8701, at *7 (Tex. App.--Houston [1st Dist.] Oct. 5, 2006, no pet.) (mem. op.). The
timeliness of Garcia's motion for new trial was at issue. His motion was due September 23, 2005,
a day that the Harris County courthouse was closed due to the evacuation. Id. at *4. The court took
judicial notice of the "official closing": "We take judicial notice that the district clerk's office was
closed on September 23, 2005, because the Harris County District Clerk has verified that the district
clerk's office was closed on that date." Id. at *7. In light of the "official closing," Garcia's motion
filed on September 26 was timely, and the court of appeals had jurisdiction over the appeal. Id. at
*7-8.

 Even more recently, the Eastland court also took judicial notice of climate conditions and
resulting official actions in Morrow v. Truckload Fireworks, Inc., No. 11-06-00197-CV, 2007 Tex.
App. LEXIS 2252 (Tex. App.--Eastland Mar. 22, 2007, no pet. h.). Morrow involved the county-wide ban of all combustibles. Id. at *1. A fireworks company challenged the ban as it related to
unrestricted fireworks. Id. at *3 n.3. Rain fell in the county, and the ban was lifted before the
appeal, causing the court to examine the circumstances to determine the applicability of the capable-of-repetition-yet-evading-review exception to the mootness doctrine and conclude that the exception
did apply: 

 We can take judicial notice that Midland County's average annual rainfall is 14.80
inches; that in seven of the last ten years Midland County's yearly precipitation was
below average; that in five of these years Midland County received less than ten
inches of rain; and that in December 2005, Midland County issued a similar
fireworks ban. Truckload has advised the court that it and Midland County litigated
a similar ban in 1996. Collectively, this provides a reasonable expectation that
Midland County will continue to suffer from drought conditions, that it will respond
to drought conditions during fireworks seasons by banning the use of all fireworks,
and that Truckload will challenge any ban of nonrestricted fireworks. Consequently,
we believe that the exception applies and that we are not required to dismiss this case
for mootness.


Id. at *5-6. The Eastland court cited the National Oceanic and Atmospheric Administration
(NOAA) website (4) as a source of the rainfall statistics. See id. at *6 n.6.

 It is at least arguable that the location of Hurricane Emily on July 18, 2005, and the existence
of any related evacuations could be facts subject to judicial notice. Although probably not common
knowledge, these facts are likely "capable of accurate and ready determination by resort to sources
whose accuracy cannot reasonably be questioned."

 (b) Trial Court Not Supplied with Necessary Information

 Here, Tidwell provided the trial court with nothing that could serve as a reliable source to
support the "accurate and ready determination" of the location of Hurricane Emily or any related
evacuations. See Tex. R. Evid. 201. In the absence of "the necessary information," the trial court
was not required to take judicial notice of these facts even if the facts were of a nature that could
have been proven by supplying the necessary information. See Tex. R. Evid. 201(d). Again
overlooking the concerns regarding relevance, (5) we conclude that, on this record, the trial court did
not  err  by  refusing  to  take  judicial  notice  that  Hurricane  Emily  was  in  the  Gulf  of  Mexico
on July 18, 2005, and had caused a number of people to evacuate and, possibly, take shelter in the
McDonald's in Shreveport. We overrule Tidwell's second point of error.

 We conclude that Robertson's testimony did not improperly correlate Tidwell's performance
on the HGN test to a precise BAC or an estimated range of BAC. Further, although the location of
Hurricane Emily and any related evacuations may be judicially noticed under the proper
circumstances, here, the trial court was not required to do so in the absence of any reliable source
that could speak to aid in the accurate and ready determination of the facts at issue. 

 Accordingly, we affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 10, 2007

Date Decided: May 9, 2007


Do Not Publish
1. Tidwell also cites Ellis v. State, 86 S.W.3d 759, 760 (Tex. App.--Waco 2002, pet. ref'd),
and O'Connell v. State, 17 S.W.3d 746, 748 (Tex. App.--Austin 2000, no pet.), to support his
contention. While these cases rely on Emerson as it relates to other issues concerning HGN
testimony, we find them to be inapposite to the issue here concerning the scope of the officer's HGN
testimony. Ellis deals with the certification of the officer that administered the HGN test and his
failure to follow the proper procedure in the administration of the HGN test. See Ellis, 86 S.W.3d
at 760. The O'Connell court concluded the trial court erred by including, over appellant's objection,
an instruction in the jury charge regarding the fact that the trial court took judicial notice of the
reliability of the HGN test. See O'Connell, 17 S.W.3d at 748.
2. Intervening topics included, inter alia, Tidwell's refusal of the portable breath test, his arrest,
the functioning of the audio-visual equipment in the police unit, impounding procedure, open
container search, and Tidwell's intended destination.
3. The scope of Texas Rule of Evidence 201 is limited to judicial notice of adjudicative facts. 
Adjudicative facts are "facts about the particular event which gave rise to the lawsuit and, like all
adjudicative facts, . . . [help] explain who did what, when, where, how, and with what motive and
intent." [citation omitted]. Emerson, 880 S.W.2d at 765. In contrast, legislative facts are ordinarily
general and "are those which help the tribunal to determine the content of law and policy and to
exercise its judgment or discretion in determining what course of action to take, and do not concern
[only] the parties. Id. at 764; Aguirre v. State, 948 S.W.2d 377, 380 (Tex. App.--Houston [14th
Dist.] 1997, pet. ref'd).
4. Specifically, the Morrow court cited www.srh.noaa.gov/maf/HTML/100TESTMAF.htm.
5. We note that the jury was able to believe Kroskie's testimony that Tidwell was in no way
impaired as the two drove home without knowing the location of Hurricane Emily on July 18, 2005. 
Further, Tidwell explained that Kroskie could have been confused as to the visit. The State did use
this inconsistency, however, during closing argument to suggest that Kroskie was untruthful.